UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEPHEN R. LEGENDRE                                    CIVIL ACTION

VERSUS                                                NO: 19-14336

LAMORAK INSURANCE COMPANY,                            SECTION: T (5)
et al.

## **ORDER**

Before the Court is a motion for summary judgment filed by Mestek, Inc.[1] Mestek filed a

supplemental memorandum in support of its motion.[2] Huntington Ingalls Incorporated (hereafter

referred to as "Avondale") filed a response in opposition.[3] Thereafter, with leave of Court, Mestek

filed a reply.[4] For the reasons set forth below, the motion for summary judgment is DENIED.

FACTS AND PROCEDURAL HISTORY

In October 2019, Plaintiff Stephen Legendre filed a Petition for Damages in state court

alleging that he was diagnosed with malignant mesothelioma in September 2019, and that his

mesothelioma was caused by exposure to asbestos from several sources, including asbestos

allegedly brought home on the Avondale work clothes of his father, Percy Legendre, Sr. Plaintiff

alleged that his father worked at Avondale in "various positions" from 1943 to 1945, and was

exposed to asbestos "on a daily basis."[5]

---

[1] R. Doc. 123.
[2] R. Doc. 131.
[3] R. Doc. 166.
[4] R. Doc. 170.
[5] R. Doc. 1-1.

1

Defendant Avondale removed the case to federal court,[6] and thereafter filed a third-party claim against Mestek, Inc., as the successor corporation to L.J. Wing Manufacturing Company, which had allegedly supplied forced draft blowers and turbines to Avondale during the time period that Percy Legendre, Sr. had worked at Avondale and whose products allegedly exposed him to asbestos that he brought home on his clothes, thereby exposing his son Stephen Legendre.[7] In its Answer, Mestek, Inc. denied it had acquired liability for L.J. Wing's products.[8] Instead, Mestek averred that Tutco, Inc. had acquired such assets and liabilities.[9]

Mestek specifically averred that "[i]n July 1987, Mestek purchased certain assets of Wing Industries, Inc., a subsidiary of Adams Industries, Inc. Wing Industries was at that time the successor to L.J. Wing Company."[10] .Mestek further averred:

> A significant number of assets remained with Wing Industries and were sold to another corporation, Tutco, Inc. Tutco, Inc. was also a subsidiary of Adams Industries, Inc. In 1994, Adams Industries, Inc. changed its name to Tutco, Inc. and was reincorporated in Pennsylvania. On information and belief, Tutco, Inc. is now a subsidiary of Smith Industries, Inc.
>
> The corporate entity which is probably the successor to L.J. Wing Manufacturing Company referred to in the Third Party Demand is Tutco, Inc.
>
> Mestek, Inc. is not the corporate successor to L.J. Wing Manufacturing Company and has had no connection whatsoever to the manufacture of the equipment allegedly sold to Avondale for use in its ships as alleged in the Third Party Demand.[11]

---

[6] R. Doc. 1.

[7] R. Doc. 2, p. 9: "MESTEK, INC., as successor-in-interest to L. J. WING MANUFACTURING COMPANY – manufactured asbestos-containing forced draft blowers and turbines used in the construction of N3 Cargo Carriers and other vessels constructed by Avondale."

[8] R. Doc. 55.

[9] *Id.*

[10] *Id.*, p. 3.

[11] *Id.*, p. 4.

2

Avondale, with leave of the Magistrate Judge,[12] filed a third-party demand adding Tutco as a third-party defendant.[13] In its demand, Avondale alleged *inter alia* that Tutco was a "successor-in-interest to L.J. WING MANUFACTURING COMPANY – as manufacturer of asbestos containing forced draft blowers and turbines used in the construction of N3 Cargo Carriers and other vessels constructed by Avondale."[14]

Mestek asserts it is not the successor to Wing Industries, Inc., formerly known as L.J. Wing Manufacturing Company ("Wing"), for liabilities related to turbines and forced-draft blowers manufactured by Wing, as alleged by Avondale in its third-party demand against Mestek. Mestek contends that "there is no credible evidence that Mestek is the successor-in-interest to [Wing] and so cannot be responsible or liable for the alleged asbestos-containing products allegedly sold by [Wing] to Avondale for use in the construction of N3 cargo ships during the Second World War."[15]

## LAW and ANALYSIS

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] When assessing whether a dispute as to any material fact exists, the court considers "all the evidence in the record but refrains from making credibility determinations or weighing the evidence."[17] All reasonable inferences are drawn in the favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to

---

[12] R. Doc. 78.
[13] R. Doc. 79.
[14] *Id.*, p. 2.
[15] R. Doc. 123-1, p. 1.
[16] Fed. R. Civ. P. 56(a).
[17] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

3

either support or defeat a motion for summary judgment."[18] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.[19] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[20]

As Mestek points out, this is a products liability action. Thus, one of the essential elements that a plaintiff must meet, as a threshold burden, is the identification of the manufacturer or supplier of the product he is claiming to be defective, or otherwise caused his illness. Accordingly, the question before the Court is whether Mestek is entitled to summary judgment as a matter of law on the issue of whether it is the successor corporation to L.J. Wing, and thus could be found liable to Avondale and the Plaintiffs. Resolution of the issue turns on the meaning of the 1987 Asset Purchase Agreement, which provides in pertinent part:

> a. Mestek purchased from Wing Industries "the Commercial and Industrial heating and Make-Up Air business and substantially all of the assets and operations thereof" (referred to as the "Business"). Asset Purchase Agreement, WHEREAS clause; Articles 1.01 and 1.10.
> b. This Agreement specifically excluded from the sale, "Seller's Heat Recovery Wheel business and assets and Seller's Draft Inducer business and assets." Seller also retained all of its real estate. Wing Agreement, WHEREAS clause; Articles 1.01 and 1.10.
> c. Mestek assumed liabilities related to the "Business" which it purchased, but the Wing Agreement specifically provided that Mestek assumed no responsibility whatsoever for any other liability which the seller may then have or acquire in the future. Id., Articles 2.03, 2.04.
> d. The seller (Wing Industries) assigned to Mestek the right to use the trade name "Wing" in marketing the products which Mestek had then acquired. Id., Article 1.09.
> e. The seller was required to change its corporate name or reincorporate so there would be no confusion as to who owned the right of the use of the name

---

[18] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).
[20] *Smith v. Reg'l Transit Auth*., 827 F.3d 412, 420 n.4 (5th Cir. 2016).

"Wing." Id. Article 1.09.

     f. Robert H. Adams, described as a "controlling shareholder and the chief executive officer of Wing Industries" executed the Agreement individually and as authorized representative of the seller.[21]

Mestek contends that, despite the 1987 Asset Purchase Agreement, it has no corporate relationship to L.J. Wing Company or its successors, and therefore, it is not the corporate successor of L.J. Wing Company. Mestek maintains that its purchase in 1987 of assets (product lines) from Wing Industries, the apparent corporate successor to L.J. Wing Company, was limited to two specific product lines. The seller, Wing Industries, retained other product lines including specifically, "Seller's Heat Recovery Wheel business and assets and Seller's Draft Inducer business and assets." As explained by Mr. Doug Glover in his Affidavit, forced draft blowers, one of the products allegedly sold to Avondale by L.J. Wing Company, falls into the same category of equipment as the "draft inducer business," which seller retained. As further explained by Mr. Glover, Mestek has never manufactured or sold turbines, and Wing Industries was not manufacturing or selling turbines at the time of the 1987 Asset Purchase Agreement. Accordingly, Mestek asserts it did not and could not have, acquired turbines or a turbine manufacturing business from Wing Industries.

Mestek concedes it could be liable as successor-in-interest to L.J. Wing Company if one of three sets of facts can be established. Mestek would have to be shown either to be L.J. Wing Company's corporate successor; or that Mestek had purchased all or substantially all of the assets of L.J. Wing Company or its successor; or that Mestek purchased the specific product line that included the product L.J. Wing Company sold to Avondale in the 1940s, which allegedly caused

---

[21] R. Doc, 123-1.

damage. Mestek asserts the Affidavit of Stephen Shae shows it is not the corporate successor to L.J. Wing Company. Further, Mestek argues the Affidavits of both Messrs. Shae and Glover establish that Mestek did not purchase all or substantially all of the assets of Wing Industries, Inc., the apparent successor to L.J. Wing Company, nor did it purchase the product line that most closely resembles the products allegedly sold by L.J. Wing Company to Avondale in the 1940s. Mestek argues that Avondale has not alleged, and could not support even if it did so allege, that Mestek meets any of the criteria needed to establish that Mestek is the successor in interest to L.J. Wing Company.[22]

Avondale notes that all of the Wing assets pertaining to its businesses, except for those that were specifically excluded (the Heat Recovery Wheel and Draft Inducer businesses), were transferred to and accepted by Mestek. One specific asset that was transferred to and accepted by Mestek as part of the Acquired Business was the Wing trademark for steam turbines, as well as all applications for the same. Avondale notes that Section 2.03 of the Purchase Agreement states, with regard to future product liability claims not set forth on Wing's Balance Sheet, that Mestek agreed to discharge all such liabilities relating to the Acquired Business. Specifically, Avondale notes, the agreement states that Mestek accepted "product liability claims relating to the [Acquired] Business … arising from products shipped and/or services performed by [Wing] prior to the date of Closing…."[23] Therefore, Avondale argues, steam turbines were unmistakably a part of the Acquired Business because Mestek acquired the trademark for steam turbines and other products within the Acquired Business and product lines. Accordingly, Avondale argues that, under the

---

[22] R. Doc. 123-1.
[23] R. Doc. 166.

6

clear and unambiguous terms of the Purchase Agreement, Mestek assumed all liabilities arising out of product liability claims for Wing steam turbines shipped by Wing prior to June 23, 1987, which would necessarily include those shipped to Avondale during the 1940s. Avondale points out that Mestek does not contest in its Motion that the steam turbines and forced draft blowers manufactured by Wing were sent to Avondale for installation in the engine rooms of N3 vessels built by Avondale during Percy Legendre, Sr.'s employment in the 1940s.[24]

Avondale asserts that Mestek is attempting to vary the unambiguous terms of the Purchase Agreement through extrinsic evidence, including the self-serving affidavit of its employee, Douglas Glover. Mr. Glover states that because Mestek has purportedly never manufactured or sold turbines, it "did not and could not have, acquired turbines or a turbine manufacturing business from [Wing]."[25] However, Avondale asserts that Mr. Glover's affidavit is inadmissible to vary the unambiguous terms of the Purchase Agreement and should be disregarded. Avondale further notes that Mr. Glover's affidavit contradicts his sworn deposition testimony in which he admits that Mestek acquired from Wing as part of the Acquired Business the right to manufacture certain types of equipment that it then chose not to manufacture.[26]

Thus, Avondale argues that the witness Mestek put forward as the person with historical knowledge of the Purchase Agreement admits that Mestek acquired some assets from Wing, including patents and trademarks, which were assets within the product lines of the Acquired Business even though they were never actually applied by Mestek to the manufacturing of equipment. Avondale argues that, while Mestek may not have applied the Wing trademark to the

---

[24] R. Doc. 166.
[25] R. Doc. 166, p. 8.
[26] *Id.*

manufacturing of steam turbines, without question under the clear terms of the Purchase Agreement, Mestek did acquire as part of the Acquired Business the right to apply the Wing trademark to steam turbines had it chosen to do so. Therefore, Avondale concludes, Mestek also assumed all liabilities associated with the steam turbines previously manufactured by Wing because that type of equipment was included in the Acquired Business.

Avondale argues that, when faced with potential liability, Mestek attempts to create a hind-sight issue by arguing that the Acquired Business had nothing to do with the manufacture of turbines or turbine-driven forced draft blowers. Avondale avers this is not an issue that is appropriate for summary judgment because there is substantial evidence from which a jury could conclude that Mestek acquired all assets and liabilities associated with steam turbines and turbine-driven blowers, even if Mestek ultimately decided not to manufacture that equipment.[27]

This Court agrees that Mestek has not established that it is entitled to summary judgment as a matter of law on the issue of whether it acquired the assets and liabilities associated with the steam turbines and turbine-driven blowers. Genuine issues of material fact exist as to what assets and liabilities Mestek intended to acquire from Wing and what assets and liabilities it legally assumed. Accordingly,

**IT IS ORDERED** that Mestek's motion for summary judgment is DENIED.

New Orleans, Louisiana, this 31st day of March 2021.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[27] R. Doc. 166, p. 13.

8